**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ELISSA A. SCHUSTER,** | ) | **CASE NO. 3:08-cv-2594** |
| | ) | |
| **Petitioner,** | ) | **JUDGE DAN A. POLSTER** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **SHERI DUFFEY, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Elissa A. Schuster ("Schuster"), *pro se*, challenges the constitutionality of her conviction in the case of *State v. Schuster*, Lucas County Court of Common Pleas Case No. CR2004-3058.  Schuster filed her Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on November 3, 2008.[1]  On April 3, 2009, Warden, Sheri Duffey, ("Respondent") filed her Answer/Return of Writ.  (Doc. No. 5.)  Schuster did not file a Traverse.[2]  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Schuster's Petition be denied.

## I. Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

---

[1]Schuster sent her Petition to the Southern District of Ohio Court which was stamped as received on October 30, 2008.  Pursuant to 28 U.S.C. § 2241(d), the case was transferred to the Northern District of Ohio.

[2]On April 21, 2009, Schuster filed a Motion for Appointment of Counsel and a Motion for Extension of Time to file a Traverse.  (Doc. Nos. 6 and 7.)  The Court denied the motion for appointment of counsel and granted Schuster to June 4, 2009 to file her Traverse.  (Doc. No. 8.) On June 1, 2009, she filed a memorandum with the Court stating she would not be filing a Traverse.  (Doc. No. 9.)

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Schuster's conviction as follows:

> {¶ 11} During the summer of 2004, appellant and her husband, Thomas J. Schuster, separated. Appellant and the couple's four-year-old daughter resided in an apartment complex located in Sylvania, Lucas County, Ohio, while Thomas moved in with his grandparents. Apparently, there was an alleged "break-in" at the apartment complex that made appellant afraid to sleep at night. Therefore, Thomas agreed to watch their daughter at appellant's apartment during the day while she slept.
>
> {¶ 12} On September 5, 2004, Thomas was babysitting his daughter when he discovered a document on appellant's computer that contained an internet conversation between appellant, who used the internet name of "Lustylis429," and an individual using the online name of "Buckin4God2." Based upon the content of the internet messages between appellant and this individual, Thomas had reason to believe that appellant e-mailed nude photographs of their daughter to Buckin4God2. Thomas printed a copy of the e-mails and turned them over to Detective Laura Bliss of the Sylvania Police Department.
>
> {¶ 13} On September 6, 2004, Detective Bliss, as well as other detectives from her department, executed a search warrant at appellant's apartment. The detective interviewed appellant and asked her whether she had posted any nude photographs of her daughter on the internet. Eventually, appellant told Detective Bliss that she sent a frontal nude photograph of her child to a Ronde Barber, a.k.a. Buckin4God2. According to Elissa, Barber, who pretended to be an NFL football player, told her that he would give her a $14,000 ring and marry her if she sent him the photographs. Appellant also told the detective that Barber wanted her to insert a vibrator into her daughter, but appellant declined to do so because the vibrator was "nasty," specifically, the paint was chipped. Instead, appellant e-mailed Barber a photograph in which her finger was on or in her child's vaginal area.
>
> {¶ 14} Katie Wilson, a social worker employed by Lucas County Children Services, was assigned to investigate the alleged sexual abuse of appellant's daughter. She conducted a videotaped interview of the child on September 10, 2004. During the interview, the four year old told Wilson that her mother touched her three times with a "stick" in her vaginal area and that her mother took photographs of her while the child was naked. Based upon the foregoing information, Wilson referred the victim to Randall S. Schlievert, M.D., for a physical examination.
>
> {¶ 15} Dr. Schlievert, a pediatrician who specializes in the field of child abuse and neglect, examined appellant's daughter but did not find any objective physical evidence of injury to the vaginal area. The child's hymen was intact. In his testimony, the doctor described the female genitalia. The outmost portion of that area are the outer lips or labia majora, which are covered with skin. Inside those are a smaller pair of lips called the labia minora, next is the vestibule, beyond that is the hymen, and then the vagina. Dr. Schlievert further testified that "vulva" is a medical term used to designate the entire genital area.

*State v. Schuster*, 2007 WL 1953680, 2007- Ohio- 3463 at ¶¶ 11-15 (Ohio App. 6th Dist. 2007).

## II.  Procedural History

### A.  Conviction

On October 7, 2004, a Lucas County Grand Jury indicted Schuster for one count of Pandering Obscenity Involving a Minor, one count of Illegal Use of a Minor in Nudity-Oriented Material or Performance, and one count of Rape of a Minor less than ten years of age.  (Resp. Exh. 1.)

On April 18, 2005, Schuster plead guilty.  (Resp. Exhs. 2, 3.)  Thereafter, Schuster retained new counsel.  On June 21, 2005, the trial court vacated Schuster's plea.  (Resp. Exh. 4.) The case proceeded to a jury trial whereat Schuster was found guilty as charged.

Prior to sentencing, Schuster filed a motion to set aside the verdict arguing that there was insufficient evidence to sustain the charge of rape and that the court erred in its charge on "penetration" under the statute.  (Resp. Exh. 5.)  Following a hearing on October 27, 2005, Schuster's motion to vacate was denied.  She was sentenced to four years on the Pandering Obscenity Involving a Minor, four years on the Illegal Use of a Minor in Nudity-Oriented Material or Performance, and a term of life imprisonment with parole eligibility after serving ten years on the Rape conviction.  (Resp. Exh. 9.)  All sentences were ordered to run consecutively. *Id.*

### B.  Direct Appeal

Represented by new counsel, Schuster filed a timely Notice of Appeal to the Sixth District Court of Appeals, Lucas County, Ohio, raising six assignments of error:

1.  Appellant received ineffective assistance of counsel in violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 10 of the Constitution of the State of Ohio.

2.  The trial court committed error in defining "sexual conduct" in the jury instructions.

3.  The offenses of pandering obscenity involving a minor, illegal use of a minor in nudity oriented material, and rape involved allied offenses of similar import under R.C. 2941.25 and the trial court erred by entering a separate conviction and sentence for each.

4.  The trial court erred to the prejudice of Ms. Schuster by sentencing her to non-minimum, consecutive sentences and must be remanded to the trial court for resentencing in light of *State v. Foster*, or, in the alternative, trial counsel was

3

ineffective in not raising the *Foster* issue.

    5.     The verdict as to rape, R.C. 2907.02(A)(1)(b) and (B), is supported by insufficient evidence and is against the manifest weight of the evidence.

    6.     The errors in trial were cumulative, thereby leading to a wrongful verdict, in violation of Appellant's constitutional rights of due process.

(Resp. Exh. 10.)  On July 6, 2007, the state appellate court affirmed the judgment of conviction, but remanded for resentencing consistent with *State v. Foster*, 109 Ohio St.3d 1, 845 N.Ed.2d 470 (2006).  (Resp. Exh. 14.)

On August 13, 2007, Schuster, through counsel, filed a timely appeal to the Ohio Supreme Court raising six propositions of law:

    I.     A criminal defendant's due process rights are violated when a trial court incorrectly instructs a jury the "penetration of the external female genitalia" is sufficient to constitute "sexual conduct" and result in a conviction of Rape.

    II.    A criminal defendant is deprived of her 6th Amendment right to effective assistance of counsel where trial counsel's multiple shortcomings and malfeasances evidence his total ineptness.

    III.   The offenses of Pandering Obscenity involving a Minor, Illegal Use of a Minor in Nudity Oriented Material, and Rape are allied offenses of similar import under R.C. 2941.25 and the trial court erred by entering a separate conviction and sentence for each offense.

    IV.   A criminal defendant should receive the benefit of the sentencing statutes in effect at the time of her alleged offenses and should be sentenced to minimum, non-consecutive periods of imprisonment.

    V.    A criminal defendant is deprived of due process where her conviction of Rape is supported by insufficient evidence and is against the manifest weight of the evidence.

    VI.   The cumulative effect of the errors committed by the trial court and defense counsel deprives a criminal defendant of her right to due process of law.

(Resp. Exh. 15.)  On October 31, 2007, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Resp. Exh. 17.)

**C. Post-Conviction Relief**

Meanwhile, on December 7, 2006, Schuster, through counsel, filed a post-conviction petition in the Lucas County Common Pleas Court alleging ineffective assistance of trial counsel and juror misconduct.  (Resp. Exh. 18.)  The State filed a motion for summary judgment/motion to dismiss.  (Resp. Exh. 19.)   After a hearing and further briefing, the trial court denied

4

Schuster's petition for post-conviction relief.  (Resp. Exh. 23.)

Schuster, through counsel, timely appealed the denial of her post-conviction petition raising one assignment of error:

> Defendant-Appellant received ineffective assistance of counsel in violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio when her trial counsel failed to bring acknowledged reports of jury misconduct immediately to the attention of the trial attorney [sic].

(Resp. Exh. 24.)  On June 13, 2008, the state appellate court affirmed.  (Resp. Exh. 26.)

Schuster, through counsel, appealed to the Ohio Supreme Court asserting the following proposition of law:

> A criminal defendant's right to effective assistance of counsel guaranteed her under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio is violated when her counsel fails even to bring acknowledged reports of jury misconduct to the attention of the trial judge.

(Resp. Exh. 27.)  On October 1, 2008, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Resp. Exh. 29.)

### D.  Resentencing

Pursuant to the state appellate court's mandate, a resentencing hearing was held on December 21, 2007.  The trial court, applying *Foster*, reimposed the same sentence.  (Resp. Exh. 30.)  Schuster did not appeal the resentencing.

### E.  Federal Habeas Petition

Schuster's habeas petition raises six grounds for relief:

> **Ground One**: Petitioner was denied her 6th Amendment right to a fair trial due to ineffective counsel.

> **Supporting Facts**:
> 1) Out of state attorney, Frank Policelli induced me to withdraw from a plea bargain that would have been beneficial to me.
> • The plea I had accepted initially and only later to retract was for 3 to 18 years with an Alford Plea being made on the three charges.  Taking my case to trial, if found guilty, I was facing a mandatory life sentence on the rape charge and an additional sentence on the other two charges.

> 2) Counsel failed to bring acknowledged jury misconduct to the attention of the court at a time where it very well would have been critical as to the outcome of the verdict.
> • Mr. Policelli was made aware by both me as well as my mother that

5

comments in reference to my guilt were allegedly being made amongst jurors during the voir dire process as brought to my mother's attention by a prospective juror on the panel who knew the petitioner's family.

3) Counsel failed to present a defense to two of the three indicted charges.
• counsel only presented a defense in direct regard to the charge of rape.
• counsel openly made a concession of my guilt in trial to the other two charges.

4) Counsel impugned my character.
• counsel portrayed other "bad acts" that were contrary to any evidence in the case, i.e., alcohol consumption, bad mother, drug use.

5) Counsel failed to object to my non-minimum, consecutive sentences.
• Petitioner did not have any prior record in the court of law and was given sentences in 2 of the 3 charges to be run consecutive to an already mandatory life sentence on the greater charge of the three.

6) Counsel was not qualified to try a computer-based pornography case.
• Counsel had a lack of familiarity with this type of case and never referred to an expert in the computer technology field to bring supportive evidence to a defense.
• Counsel failed to make notice or mention to technical defenses raised by Ashcroft versus Free Speech Coalition.

7) Counsel failed to object to separate convictions and sentencing for allied offenses of similar import.

8) Counsel "opened the door," in turn sealing my fate by introducing into evidence a videotape of the 4 year old incompetent victim that even the State objected to bringing about as evidence.

**Ground Two**: Petitioner was denied protection of the double jeopardy clause pursuant to the Fifth Amendment which protects against multiple prosecution or punishment for the same offense.

**Supporting Facts**: Trial court erred by entering a separate conviction and sentence for each, when all 3 charges involved allied offenses of similar import. There was no evidence in record to indicate that Petitioner did anything more than pose the victim child for photographs which were then sent over the internet.

**Ground Three**: Petitioner was denied due process and equal protection of the law pursuant to the 14th Amendment due to errors in trial which were cumulative, thereby leading to a wrongful verdict.

**Supporting Facts**: A cumulative effect of the errors of trial demonstrate that there is a reasonable probability that without all these errors, the outcome of the trial would have been different.  Additionally, Petitioner received an unfair trial due to extensive media coverage in Northwestern Ohio where the trial, as well as preliminary hearings took place.

**Ground Four**: Petitioner was denied her right to a fair trial pursuant to the 6th Amendment and 14th Amendment due to jury misconduct.

**Supporting Facts**: In this case, potential jurors are alleged to have been

discussing the facts of the case as portrayed in the media and expressing opinions regarding the Petitioner's guilt prior to any evidence having been presented and prior to any instructions of law or jury deliberations.

A member of the jury was overheard during voir dire, by another prospective juror, stating "why is it taking so long . . . we already know she's guilty."

Other prospective jurors, some of which sat on the actual jury were also overheard discussing details of the case as gleaned by the media.

**Ground Five**: Petitioner was denied due process and equal protection of law because the verdict as to rape is supported by insufficient evidence and is against the manifest weight of the evidence in violation of the 14th Amendment.

**Supporting Facts**: In this case, there is no evidence of penetration of the victim's vaginal cavity by the Defendant, nor were there any medical findings, as determined by a physician the State called to testify as an expert, on the body that would support a rape charge.

**Ground Six**: Petitioner was denied a fair trial in violation of the 14th and 6th Amendments due to judicial misconduct.

**Supporting Facts**: 1) the trial court erred in defining "sexual conduct" in the jury instructions. • The State of Ohio filed a motion for a specific jury instruction which requested that the court expand the statutory definition of "sexual conduct" to include the following definition: "penetration of the external female genitalia known as the vulva or the labia is sufficient for penetration." Defendant objected to this instruction since it extended the definition of vaginal cavity beyond the statutory definition and was not supported by the law in Ohio. 2) The presiding trial judge was not neutral because she was a former county prosecutor and openly favored the State by allowing such a change in the "sexual conduct" definition to be expanded to fit their argument for the case.  3) Petitioner, further, sees it to have been evident that she was judged more harshly and even prejudicially because the judge overseeing trial was also a female and a mother, creating an unfair bias against Petitioner.

(Doc. No. 1.)

### III. Exhaustion and Procedural Default

**A.  Exhaustion**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state

courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

### B.  Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-2 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

8

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his or her claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir.1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986). Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

A petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172. However, it is not necessary to resolve the issue of prejudice if a

9

petitioner has not shown cause.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

Respondent contends that several of Schuster's claims are noncognizable or are procedurally defaulted.  Where appropriate, these issues will be addressed below.

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2009).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

10

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

As Schuster is proceeding *pro se*, "'[her] pleadings are held to a less stringent standard than those prepared by an attorney' and are liberally construed in [her] favor." *Humphreys v. United States*, 238 Fed. Appx. 134, 138 (6th Cir. 2007)(*quoting Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)).

## V.  Analysis

### A.  Ground One – Ineffective Assistance of Counsel

Schuster raises eight subclaims of ineffective assistance of trial counsel.  Respondent argues that several of these subclaims were not presented in the state courts and are procedurally defaulted.

To establish ineffective assistance of counsel, a petitioner must demonstrate that her counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the

11

petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what [s]he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

### 1.  Subclaim One - Induced to Withdraw from a Plea Bargain

Schuster contends that counsel induced her to withdraw from a plea bargain that would have been beneficial to her as she was to receive a prison term of three to eighteen years rather than the mandatory life sentence she received after the jury conviction.  Respondent argues that this subclaim is procedurally defaulted.  The record reflects that Schuster failed to present this claim in state court.  Since Ohio law would prohibit her from raising this issue now, it is procedurally defaulted.  *See Engle*, 456 U.S. at 125, n.28; *Collins v. Perini*, 594 F.2d 592 (6th Cir. 1979)(petitioner cannot file a delayed appeal following a timely direct appeal; an Ohio post-conviction remedy is not available if a claim could have been raised at trial or on direct appeal).

### 2.  Subclaim Two - Jury Misconduct

Schuster contends trial counsel was ineffective for failing to bring jury misconduct allegations to the court's attention.[3]

---

[3]In ground four, Schuster also raises this claim as a denial of her rights to a fair trial under the Fourteenth Amendment.  *See* Section D.

Schuster properly raised this argument in a state post-conviction petition since it was based on evidence outside the record. *See State v. Ishmail*, 377 N.E.2d 500 (Ohio 1978)(syllabus ¶ 1). The trial court applied the *Strickland* standard along with the applicable facts and concluded that counsel were not aware of a claim relating to jury misconduct until after the verdicts were rendered. (Resp. Exh. 23, p. 27.) Moreover, the court noted that once counsel learned of alleged jury misconduct, they took appropriate steps to investigate. *Id.* The trial court ultimately concluded that there was no credible evidence to substantiate the jury misconduct claim. *Id.*

The state appellate court applied the *Strickland* standard when ruling on Schuster's ineffective assistance of counsel claim as follows:

> {¶ 21} Upon thorough review of the record, we find that appellant failed to establish her claim of ineffective assistance of trial counsel. The record supports the finding of the trial court that counsel's representation was not deficient. The credible evidence produced establishes that counsel was not informed during the course of the trial of the alleged misconduct. Once alerted to the issue, the evidence establishes that counsel took reasonable efforts to pursue the allegations in an attempt to collect evidence to support a post-trial motion. Since counsel was unable to obtain affidavits, or other supporting testimony, from the juror(s) involved, it was reasonable that no post-trial motions, including a motion for new trial, was filed by appellant's trial counsel.

> {¶ 22} We further find that appellant failed to establish that, even if counsel's performance was deficient, she was prejudiced by counsel's alleged deficiencies. Appellant argues that she was denied the effective assistance of trial counsel, but does not ask this court to review the trial court's finding that no juror misconduct was established in this case. In the absence of juror misconduct, appellant cannot establish that she was prejudiced by trial counsel's alleged deficiencies with respect to bringing the matter to the trial court's attention at an earlier date.

(Resp. Exh. 26, ¶¶ 21-22.)

The state appellate court's decision involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Subclaim two is without merit.

### 3. Subclaim Three - Failure to Present a Defense

Schuster argues that counsel was ineffective for failing to present a defense and conceding her guilt on the charges of Pandering Obscenity Involving a Minor and the Illegal Use of a Minor in Nudity-Oriented Material. The state appellate court concluded that this claim was

13

without merit as follows:

> {¶ 23} Appellant also asserts that her trial counsel was ineffective because he essentially conceded her guilt on the charges of pandering obscenity involving a minor and the illegal use of a minor in nudity oriented material.  It appears from a reading of the trial transcript, especially a reading of defense counsel's closing argument, that counsel did, in the face of overwhelming evidence, concede to the lesser two of the three charges.  His main focus was on the charge of rape, which, if appellant was found guilty by the trier of fact, carried a mandatory life sentence in prison.  *See* R.C. 2907.02(B).  Again, this was a strategic decision on the part of trial counsel, and even if it was debatable strategy, does not constitute ineffective assistance of counsel.

(Resp. Exh. 14, ¶ 23.)

This, too, was a reasonable application of clearly established federal law.  Subclaim three is without merit.

### 4.  Subclaim Four - Other "Bad Acts"

Schuster claims that trial counsel impugned her character by portraying other "bad acts" that were "contrary to any evidence in the case."   She cites statements made by defense counsel during closing arguments admitting that she was a "bad mother," and that she used both drugs and alcohol.

Schuster raised this issue on direct appeal.  The state appellate court reasoned that counsel's argument was legitimate trial strategy:

> {¶ 60} It is axiomatic that opening and closing arguments are not evidence. *State v. Frazier* (1995), 73 Ohio St.3d 323, 338, 1995-Ohio-235. Thus, Evid.R. 404 is not implicated in our disposition of this issue. Rather, the question here is one of prejudice to appellant's case. A careful reading of trial counsel's statements reveals that he was actually trying to encourage the jurors to concentrate on the evidence in this case instead of focusing on appellant's behavior and the possible underlying reasons for that behavior. Again, while the soundness of this strategy is debatable, it does not constitute ineffective assistance of counsel. Therefore, appellant's arguments in this regard are meritless.

(Resp. Exh. 14, ¶ 60.)  The state appellate court reasonably applied *Strickland* and held that Schuster had not overcome the presumption that the challenged action might be considered sound trial strategy.  *See Strickland*, 466 U.S. at 689.  This subclaim is without merit.

### 5.  Subclaim Five - Failure to Object at Sentencing

Schuster claims that counsel failed to object to her non-minimum, consecutive sentence.  Respondent argues that Schuster waived this claim as it was not raised on direct appeal.

14

Schuster raised an identical claim on direct appeal from her initial sentencing.  The state appellate court properly concluded that trial counsel could not have raised *Foster* at her initial sentencing as she was sentenced on October 27, 2005 and *Foster* was not decided until February 27, 2006.  (Resp. Exh. 14, ¶ 61.)  More importantly, Schuster's original sentence was vacated and she was resentenced under *Foster* on December 21, 2007.  (Resp. Exh. 30.)  The court resentenced her to the same non-minimum, consecutive sentence and Schuster sought no appeal. Therefore, the issue of trial counsel's failure to object to her initial non-minimum, consecutive sentence is moot.

### 6.  Subclaim Six - Counsel Not Qualified

Schuster also claims that counsel was "not qualified" to try a "computer-based pornography" case as he was not familiar with this type of case and did not seek the help of an expert in the computer-technology field.  The record reflects that Schuster failed to raise this claim in the state courts.  Since she would be prohibited from raising it now, it is procedurally defaulted.  *See Engle*, 456 U.S. at 125, n.28; *Collins*, 594 F.2d at 592.

### 7.  Subclaim Seven - Allied Offenses

Schuster argues that trial counsel was ineffective for not objecting "to separate convictions and sentencing for allied offenses of similar import."  As discussed  in the analysis of ground two below, the appellate court, after a lengthy discussion, concluded that the offenses were not allied and that the separate sentences were lawful.  Consequently, the court ruled Schuster's counsel was not ineffective as follows:

> {¶ 56} Clearly, the rape statute requires penetration of the vaginal or anal cavity, however slight, of another, whereas neither R.C. 2907.321 nor R.C. 2907.323 have that requirement. Moreover, as applicable to this action, R.C. 2907.01(A)(1)(b) has an age requirement, under 13 years of age, while both R.C. 2907.321 and R.C. 2907.323 apply to any minor, including those minors over the age of 13. Accordingly, the elements of R.C. 2907.02(A)(1) do not correspond with those of either R.C. 2907.321 or R.C. 2907.323. Consequently, they are not allied offenses of a similar import and did not need to be merged for the purpose of sentencing. Thus, appellant's trial counsel did not err in failing to raise this issue in the common pleas court, and her third assignment of error is found not well-taken. It follows that counsel was not ineffective for failing to raise this question in the trial court and that portion of appellant's first assignment of error related to this issue lacks merit.

(Resp. Exh. 14, ¶ 56.)

15

While the appellate court noted that the lack of objection required the application of a plain error standard, it also noted that if the offenses were indeed allied, the sentence would have amounted to plain error. Therefore, the failure to object had no impact upon the court's review of the sentence. Based upon the court's interpretation of Ohio law regarding allied offenses, the finding regarding counsel's effectiveness was entirely reasonable. Subclaim seven is without merit.

### 8.  Subclaim Eight  - Counsel "Opened the Door"

Finally, Schuster alleges she was denied effective assistance by counsel "introducing into evidence a video tape of the four year old incompetent victim that even the State objected to bringing about as evidence." Schuster raised this claim on direct appeal when she alleged that she was prejudiced by the incompetence of her counsel in failing to review the videotaped interview of the four year old victim until just before opening statement. The state appellate court addressed the claim and stated:

> {¶21} It is clear from the record of this cause that appellant's trial counsel did view the videotaped interview prior to opening arguments and that his strategy was to use the interview to create a question as to whether appellant's child was touched by her mother at all and/or that the child, who was awakened at 12:30 a.m. by her mother, was confused because she said that her mother touched her with a stick in the area where she goes "potty." While the merits of this strategy may be debatable, this tactical decision does not constitute ineffective assistance of counsel. [citations omitted.]

> {¶22} Moreover, appellant fails to establish that but for her counsel's alleged error in this regard, the outcome of her trial would have been different. In order to establish prejudice from her counsel's purported ineffectiveness, appellant must prove that there exists a reasonable probability that the outcome of the proceedings would have been different were it not for counsel's errors. [citation omitted] A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *State v. Bradley*, 42 Ohio St.3d at 142. Here, and based upon the other evidence presented at trial, appellant cannot demonstrate a reasonable probability that the outcome of her trial would have been different.

(Resp. Exh. 14, ¶¶ 21, 22.)

This was not an unreasonable application of clearly established federal law. Subclaim eight is also without merit.

### B.  Ground Two - Double Jeopardy

Schuster raises a Double Jeopardy claim alleging that the trial court erred by entering a

separate conviction and sentence for each charge when all three involved allied offenses of similar import.  Respondent contends that Schuster's Double Jeopardy claim is noncognizable in federal court, or in the alternative, Schuster has procedurally defaulted this claim by failing to object at sentencing.

There are two prerequisites for this Court to consider the merits of Petitioner's Double Jeopardy claim.  First, Petitioner must have satisfied the procedural requirements for habeas review under 28 U.S.C. § 2254(b)(1)(A) by "fairly present[ing] to the state courts either the substance or substantial equivalent of the federal claim that [s]he is presenting to a federal habeas court." *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004).  Second, the last state court decision on the issue must "fairly appear to rest primarily on federal law or to be interwoven with such law." *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  Thus, a petitioner procedurally defaults her claim if: (1) she fails to present it to the state court; or (2) the state court dismisses the claim on an adequate and independent state procedural ground.  *See id.* at 729-30.

Although the state appellate court noted that counsel failed to object at sentencing, it went on to consider the merits of the allied offense issue, acknowledging that if the offenses were allied, the multiple sentences would be plain error.  Therefore, this Court does not consider ground two procedurally defaulted.  The appellate court went on to interpret state law in determining the offenses were not allied and, therefore, did not need to be merged for the purpose of sentencing.

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62 (1991).  As the appellate court relied on state law to analyze this issue, it is not cognizable in federal habeas.

Going further, the claim also lacks merit under federal constitutional standards.  The Double Jeopardy Clause protects against, *inter alia*, multiple punishments for the same offense.  In this context, "'the Double Jeopardy Clause does no more than prevent the sentencing court

17

from prescribing greater punishment than the legislature intended.'" *Garrett v. United States*, 471 U.S. 773, 793 (1985)(*quoting Missouri v. Hunter*, 459 U.S. 359, 366 (1983)); *see also Albernaz v. United States*, 450 U.S. 333, 344 (1981).  "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense."  *Garrett*, 471 U.S. at 778.  In a single prosecution charging a defendant with violations of different statutes, if the statutes make clear that the legislature intended to impose cumulative punishments, the court is authorized to impose those punishments and the Double Jeopardy Clause is not violated.  *Garrett*, 471 U.S. at 779; *see also Missouri v. Hunter*, 459 U.S. at 368-69; *Albernaz*, 450 U.S. at 344 ("Where [the legislature] intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution.")

The Supreme Court developed the "same elements" test in *Blockburger v. United States*, 284 U.S. 299 (1932) to determine whether cumulative punishments were intended, holding that:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id*. at 304.  The *Blockburger* "same elements" test is a general rule of statutory construction, and as a result, when "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."  *Missouri*, 459 U.S. 368-69.

The state appellate court addressed Schuster's argument as to her sentence as follows:

> {¶ 27} The Double Jeopardy Clause of the United States Constitution and Section 10, Article I, Ohio Constitution, proscribe successive prosecutions and cumulative punishments for the same offense. *State v. Rance*, 85 Ohio St.3d 632, 634, 1999-Ohio-291. Nonetheless, when legislative intent in enacting a multiple-count statute is clear, cumulative sentencing for the commission of certain offenses is not unconstitutional. *Id*. at 635-636. Ohio's multi-count statute, R.C. 2941.25 [FN3] permits punishment for multiple offenses of dissimilar import. R.C. 2941.25(B). However, it prohibits multiple punishments in those cases where the same conduct/single action leads to an allied offense of a similar import. R.C. 2941.25(A).

FN3. R.C. 2941.25 provides:

"(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 28} Pursuant to *Rance*, determination of whether the multiple offenses are of a similar import involves a two-step process. *Id*. First, a court must decide whether the elements of the offenses are such that the commission of one offense necessarily includes the commission of the other offense. This is done by an examination of the criminal elements of the offenses in the statutory abstract. *Id*. at paragraph one of the syllabus. If the elements do not correspond, they are offenses of a dissimilar import, and a court's inquiry is, therefore, at an end. *Id*. If they do correspond, a court examines a defendant's conduct to determine whether the crimes were committed separately or with a separate animus. *Id*. at 639; *State v. Jones*, 78 Ohio St.3d 12, 14, 1997-Ohio-38. If the examination of the conduct results in a finding that it comprised a single criminal act or that it was committed with but one animus, the defendant cannot be convicted of both offenses and receive multiple punishments for those offenses. *Id*. (Citation omitted.).

\* \* \*

{¶ 34} In the present case, appellant e-mailed two nude photographs of her four-year-old daughter to Buckin4God2. One was the photograph showing appellant's finger on or in the child's vaginal area. In this first photograph, the child's face is not shown. This photograph was e-mailed separately from a second photograph. In the second photograph, which was requested by Buckin4God2, the child is nude and her face is revealed. Thus, we have two separate instances of conduct, not a single act. *Accord, State v. Stone*, 1st Dist. No. C-040323, 2005-Ohio-5206 (Five images of children engaging in sexual activity that were downloaded to a computer in a two minute period are five separate acts).

{¶ 35} Nevertheless, because we have three charged offenses based upon only two underlying acts, we must follow *Rance* and first determine whether, in the abstract, the elements of any of these offenses correspond with any of the other offenses to the point where the commission of one offense necessarily includes the commission of the other offense. R.C. 2907.321(A)(2) reads, in pertinent part:

{¶ 36} "(A) No person with knowledge of the character or material or performance involved shall do any of the following:

{¶ 37} "(1) \* \* \*

{¶ 38} "(2) Promote or advertise for sale or dissemination, \* \* \* deliver, \* \* \* display, or provide any obscene material that has a minor as one of its participants

19

* * *.

{¶ 39} "Obscene" material is defined in R.C. 2907.01(F) as any matter, "judged with reference to ordinary adults, to which any of the following apply:

{¶ 40} "(1) Its dominant appeal is to prurient interest;

{¶ 41} "(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, * * * or nudity in a way that tends to represent human beings as mere objects of sexual appetite; * * *."

{¶ 42} "(3) * * *

{¶ 43} "(4) * * *

{¶ 44} "(5) It contains a series of displays or descriptions of sexual activity * * * [or] nudity * * *, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such interest is primarily for its own sake."

{¶ 45} R.C. 2907.323, provides, in relevant part:

{¶ 46} "(A) No person shall

{¶ 47} "(1) * * *

{¶ 48} "(2) * * * photograph the person's minor child or ward, in a state of nudity or consent to the use of the person's minor child or ward in a state of nudity in any material or performance, or use or transfer a material or performance of that nature,* * *."

{¶ 49} In comparing the elements of R.C. 2907.321 with those of R.C. 2907.323, we conclude that the commission of one of these offenses does not necessarily include the commission of the other offense. First, R.C. 2907.321 has an intent element requiring that a defendant have the knowledge of the character of the material or performance. R.C. 2907.323 does not have this element. On the other hand, R.C. 2907.323 expressly requires that the minor be in a "state of nudity." While nudity is mentioned as one of the prohibited acts in R.C. 2907.321, it is not the sole required act. Therefore, the elements of the offenses do not correspond, and they are not allied offenses of a similar import within the meaning of R.C. 2941.25(A).

{¶ 50} Next we must determine whether the elements of either of these offenses correspond with the elements of rape.

{¶ 51} R.C. 2907.02(A)(1), the rape statute, provides, in material part, the following:

{¶ 52} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:

{¶ 53} "(a) * * *

{¶ 54} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

20

{¶ 55} R.C. 2907.01(A)(1) defines "sexual conduct" as "vaginal intercourse between a male and a female, anal intercourse, fellatio, and cunnilingus between persons, regardless of sex, and without privilege to do so, the insertion, however slight, of any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." (Emphasis added.)

{¶ 56} Clearly, the rape statute requires penetration of the vaginal or anal cavity, however slight, of another, whereas neither R.C. 2907.321 nor R.C. 2907.323 have that requirement. Moreover, as applicable to this action, R.C. 2907.01(A)(1)(b) has an age requirement, under 13 years of age, while both R.C. 2907.321 and R.C. 2907.323 apply to any minor, including those minors over the age of 13. Accordingly, the elements of R.C. 2907.02(A)(1) do not correspond with those of either R.C. 2907.321 or R.C. 2907.323. Consequently, they are not allied offenses of a similar import and did not need to be merged for the purpose of sentencing. Thus, appellant's trial counsel did not err in failing to raise this issue in the common pleas court, and her third assignment of error is found not well-taken. It follows that counsel was not ineffective for failing to raise this question in the trial court and that portion of appellant's first assignment of error related to this issue lacks merit.

(Resp. Exh. 14, ¶¶ 27-28; 34-56.)  The state appellate court compared the elements of each of the three offenses to determine whether they correspond to each other.  The court ruled that the charges were not allied offenses of a similar import and did not need to be merged for the purpose of sentencing.  (Resp. Exh. 14, ¶ 56.)

This same analysis would, under applicable federal constitutional standards, require the determination that separate sentences did not run afoul of the Double Jeopardy Clause.  Two distinct photographs were taken and disseminated by Schuster.  She was convicted and sentenced for only one violation of O.R.C. § 2907.321(A)(2), Pandering Obscenity, and one violation of O.R.C. § 2907.323(A)(2), Illegal Use of a Minor in Nudity-Oriented Material or Performance.  Neither of these offenses require that a rape be committed against the subject child under O.R.C. § 2907.  Ground two is without merit.

### C.  Ground Three - Cumulative Errors

Schuster claims that she was denied due process and equal protection of the law under the Fourteenth Amendment as a result of cumulative errors at the trial court.  She further argues that the cumulative effect of the errors at trial demonstrates that "there is a reasonable probability

that without all these errors, the outcome of the trial would have been different."[4]

"[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue." *Cross v. Stovall*, 238 Fed. Appx. 32, 41 (6th Cir. 2007), *quoting Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *see also Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) ("While we have recognized that errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone may cumulatively produce a trial setting that is fundamentally unfair, the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.") (internal quotations and citations omitted), *cert. denied*, 127 S. Ct. 1485 (2007). Schuster makes no effort to outline what the cumulative errors were. Moreover, the Court has found all of her stated claims to be either noncognizable, defaulted or without merit. Therefore, no relief should be granted under ground three.

### D. Ground Four - Jury Misconduct

Schuster further alleges that she was denied a fair trial under the Fourteenth Amendment because of jury misconduct. She contends that potential jurors during the *voir dire* discussed the facts of the case as portrayed by the media and expressed opinions as to her guilt. Respondent avers that even though Schuster argued a denial of effective assistance of counsel based on this allegation, she did not present an independent jury misconduct claim to the state appellate court, and, therefore, it is procedurally defaulted.

Upon review of the record, the Court finds that Schuster presented a juror misconduct claim to the trial court in her post-conviction relief petition. (Resp. Exh. 18, ground 3.) The trial court ruled on the claim and found that "credible evidence does not establish jury misconduct." (Resp. Exh. 23, p. 25.) However, upon appeal, Schuster presented only an ineffective assistance of counsel claim for failing to timely raise the juror misconduct allegation. The state appellate court noted that Schuster did not ask the Court to review the trial court's finding that no jury

---

[4]She also contends that she "received an unfair trial due to extensive media coverage. . . ." This issue was not raised on direct appeal, and therefore, it is procedurally defaulted. *See Engle*, 456 U.S. at 125, n.28.

misconduct was established.  (Resp. Exh. 26, ¶ 22.)  As Schuster did not present a juror misconduct claim on direct appeal, she has waived it.  Ground four is procedurally defaulted.

### E.  Ground Five - Sufficiency of the Evidence

Schuster also argues that she was denied due process and equal protection of the law in violation of the Fourteenth Amendment as there was insufficient evidence to convict her on the rape charge.[5]  The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

As to the sufficiency of the evidence claim, the state appellate court concluded:

{¶ 71} In her fifth assignment of error, appellant asserts that the verdict finding her guilty of rape is supported by insufficient evidence and is against the manifest weight of the evidence offered at her trial. In particular, appellant claims that no evidence was presented at her trial to establish penetration of her child's "vaginal cavity," She also maintains that there was no medical evidence offered to show that a rape occurred.

* * *

---

[5]Schuster also includes a manifest weight of the evidence claim in ground five.  Such claims are not cognizable on federal habeas review.  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio 2006).

{¶ 73} When addressing the question of sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, ¶ 47, *citing State v. Jenks* (1991), 61 Ohio St .3d 259, paragraph two of the syllabus. Sufficiency tests the adequacy of the evidence offered at trial. *State v. Thompkins*, 78 Ohio St.3d at 386. Thus, whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

{¶ 74} In the present case, we have already held that "sexual conduct" as used in Ohio's rape statute includes penetration of the labia. The enlarged photograph of appellant's finger on her daughter's genital area was entered into evidence at appellant's trial. Based upon that photograph, the jury, as the trier of fact, could conclude that appellant's finger was within the child's labia. We, as the thirteenth juror, will not disturb that conclusion. Furthermore, in viewing the photograph in a light most favorable to the prosecution, a rational trier of fact could the [sic] find that the element of penetration was proven beyond a reasonable doubt. Finally, although Dr. Schlievert found no physical injury to the victim's genitalia, he also testified that a vast majority of the children he has examined as the result of claims of sexual abuse have a normal examination because (1) whatever object that is used to penetrate the vaginal area never reaches the hymen; and (2) any injury to the outer area of the genitals heals very quickly. Accordingly, appellant's fifth assignment of error is found not well-taken.

(Resp. Exh. 14, ¶¶ 71, 73-74.)  The state appellate decision was neither contrary to, nor an unreasonable application of clearly established federal law.  The appellate court relied on "legal principles and standards flowing from [Supreme Court] precedent."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).  Therefore, this Court may not disturb that finding and ground five is without merit.

### F.  Ground Six – Judicial Misconduct

Schuster raises several judicial misconduct claims, two of which Respondent contends are procedurally defaulted.

Schuster alleges in subclaim one that the trial court improperly defined "sexual conduct" in the jury instructions.  She raised the issue of improper jury instructions with the state appellate court, which found the claim to be without merit, ruling as follows:

{¶ 63} In her second assignment of error, Schuster claims that the trial court granted, over appellant's objection, the state's request to expand the definition of "sexual conduct" to include "penetration of the of the [sic] external female genitalia known as the vulva or the labia is sufficient for penetration [under the rape statute]."

{¶ 64} An appellate court will not reverse a trial court's decision to give a particular jury instruction absent an abuse of discretion. *State v. Johnson*, 11th

24

Dist. No.2001-A-0043, 2002-Ohio-6570, at ¶ 24. (Citation omitted.) An abuse of discretion occurs when the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 40.

{¶ 65} As set forth *infra*, the statutory definition of "sexual conduct" means, among other things, "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however, slight, is sufficient to complete vaginal or anal intercourse."

{¶ 66} Appellant relies on *State v. Wells*, 91 Ohio St.3d 32, 2001-Ohio-227, in arguing that a "cavity" within the meaning of 2907.01(A)(1) is a "natural hollow place within the body," Appellant then quotes the definition of "vagina" from Webster's Unabridged Dictionary as being " 'a passage leading from the uterus to the vulva' " and the "vulva" as being " 'the external female genitalia." These same definitions are found in Webster's Collegiate Dictionary (11 Ed. Rev.2003) at, respectively, 1380 and 1404.

{¶ 67} Initially, we reject the comparison of this cause to *State v. Wells* because that case involved an alleged penetration of the anal cavity, not the vagina. *Id.* at 35. Moreover, a number of appellate courts, including this court, have held that penetration of the labia is sufficient to prove penetration of the vagina for the purpose of satisfying R.C. 2907.02. *See, e.g., State v. Gilbert*, 10th Dist. No. 04AP-933, 2005-Ohio-5536 (Insertion of fingers into the labia sufficient to prove rape); State v. Roberts, 1 st Dist. No. C-040547, 2005-Ohio-6391 (penetration of the labia is sufficient evidence of rape if the labia are "spread."); *State v. Grant*, 2d Dist. No. 19824, 2003-Ohio-7240 (entry into the vulva or labia is sufficient penetration to prove rape); *State v. Ulis* ((July 23, 1994), 6th Dist. No. L-93-247 (entry of the anterior of the female genital organ, the labia, is sufficient penetration to constitute rape).

{¶ 68} Accordingly, we conclude that case law supports the trial court's giving of the instruction supplementing the statutory definition of "sexual conduct." Therefore, the trial court did not abuse its discretion in providing this instruction to the jury. Appellant's second assignment of error is found not well-taken.

(Resp. Exh. 14, ¶¶ 63-68.)

"The nature of the particular instruction given is a matter of state law, and we are not at liberty to grant a writ of habeas corpus simply because we find the state's decision was incorrect under state law." *Newton v. Million*, 349 F.3d 873, 879 (6th Cir.2003); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir.2002) ("State law means what the state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254."). Within broad constitutional limits, a state has discretion to determine the elements of its own crimes, what proofs are essential to establish the elements of those crimes, and the available defenses. *See Patterson v. New York*, 432 U.S. 197, 210 (1977). On habeas review, the federal courts are bound by the state courts' interpretation of their own laws. *See*

25

*Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975).  "The fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  *Estelle v. McGuire*, 502 U.S. at 71; *accord Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief.")  A petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Cupp. v. Naughten*, 414 U.S. 141, 147 (1973), *quoted in Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

The state appellate court applied state law in concluding that the jury instruction was proper.  Schuster has not demonstrated that the instruction was "ailing" in order to require a due process analysis.  As federal habeas courts are bound by a state court's interpretation of its own laws, the appellate court's decision cannot be disturbed.

In subclaims two and three of ground six, Schuster avers that the "trial judge was not neutral because she was a former county prosecutor and openly favored the State by allowing such a change in the 'sexual conduct' definition to be expanded to fit their argument for the case."  Schuster also claims she "was judged more harshly and even prejudicially because the Judge overseeing trial was also a female and a mother creating an unfair bias against Petitioner."  Schuster raised these two subclaims for the first time in her federal habeas petition.  Therefore, these claims are procedurally defaulted.  *See Engle*, 456 U.S. at 125, n.28; *Collins*, 594 F.2d 592.

## VI.  Cause and Prejudice/Manifest Injustice

The Court has found some of Schuster's claims are procedurally defaulted.  This, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *Maupin*, 785 F.2d at 138-39.  Schuster has not provided any justification as "cause" for her procedural default.  Since both cause and prejudice must be shown to excuse a procedural default, her failure to establish cause eliminates the need to consider prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494-95 (1986).  Procedurally defaulted claims may also be excused when a petitioner presents new evidence demonstrating that she is "actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  No such claim has been raised.  Therefore, all of Schuster's procedurally defaulted claims are waived.

26

## VII.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Schuster's Petition be denied.


s/ Greg White<br>United States Magistrate Judge

Date:  July 29, 2009


## OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**